IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA KIESSLING and** | : | |
| **ROBERT MENDLER,** | : | Civil No. 1:08-cv-01600 |
| | : | |
| Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| **AMERICAN BANKERS LIFE** | : | |
| **ASSURANCE COMPANY OF** | : | |
| **FLORIDA and WELLS FARGO** | : | |
| **FINANCIAL** | : | |

## MEMORANDUM

Before the Court is Defendant Wells Fargo Financial Pennsylvania, Inc.'s ("Wells Fargo") Motion to Compel Arbitration. (Doc. No. 13.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted.

**I.     BACKGROUND**

This case arises from a dispute over a financing agreement with Wells Fargo. (Doc. No. 1 ¶¶ 6-7.) On or about October 25, 2005, Robert Mendler and Sheena Mendler along with Norman Kiessling and Barbara Kiessling entered into a loan transaction with Wells Fargo ("2005 Loan"). (Doc. No. 14 at 3; Doc. No. 15 at 3.) The parties to the 2005 Loan, including current Plaintiffs Robert Mendler and Barbara Kiessling, also entered into the arbitration agreement at issue with Wells Fargo at that time. (Doc. No. 14 at 3; Doc. No. 15 at 3.)

Plaintiffs claim that Robert Mendler and Norman Kiessling entered into a subsequent loan agreement with Wells Fargo on or about August 2, 2007 ("2007 Loan") and purchased life-insurance with Defendant American Bankers Life Assurance Company of Florida ("American Bankers") in connection with that loan. (Doc. No. 15 at 3.) The Plaintiffs allege that they had

difficulty paying the premiums on the loans due to Norman Kiessling's illness, and requested a modification of the loans terms for accommodation. (Doc. No. 1 ¶ 8.) Wells Fargo agreed to a modification, and the Plaintiffs signed loan modification paperwork on January 11, 2008. (Id. ¶ 12.) Wells Fargo then required a second modification agreement to be executed, which was signed by Norman Kiessling on January 18, 2008. (Id. ¶ 18.) Norman Kiessling died on January 28, 2008 and American Bankers refused to honor the life insurance claim, sending the loan into default and bringing about the present dispute. (Id. ¶¶ 20-23.)

## II.  Discussion

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides, in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Therefore, arbitration agreements are "enforceable to the same extent as other contracts." Alexander v. Anthony Intern., L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing Seus v. John Nuveen & Co., 146 F.3d 175, 178 (3$^d$ Cir. 1998)). The FAA evidences a strong federal policy in favor of arbitration and federal law presumptively favors the enforcement of arbitration agreements. Id.

A motion to compel arbitration calls for a two-step inquiry: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 533 (3d Cir. 2005). A party to a valid and enforceable arbitration agreement is entitled to a stay pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

### A. Existence of a Valid Agreement to Arbitrate

In this case, there is no dispute that the Plaintiffs were parties to the arbitration agreement signed in 2005 or that this agreement was valid at the time. (Doc. No. 15 at 3; Doc. No. 14 at 3.) The arbitration agreement at issue provides, in pertinent part:

> Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort, or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration. If any party covered by this Agreement elects arbitration, that election is binding on all parties to this Agreement. A Claim may include, but shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreement, or your willingness to abide by the terms of this Agreement, or the validity of this Agreement.

(Doc. No. 14-1 Ex. C.) Instead, Plaintiffs essentially argue that the arbitration agreement in 2005 is not binding on them for purposes of this case because the dispute arises out of loan modifications in January 2008, which did not include a separate arbitration agreement. (Doc. No. 15 at 3-4.) Because of this, Plaintiffs claim that "without an Arbitration Agreement executed by both borrowers, Robert Mendler and Norman Kiessling in January 2008, Defendant-Wells Fargo Financial's attempted reliance upon an Arbitration Agreement dated October 25, 2005 is misplaced." (Id. at 4.) Plaintiffs' further contend that "review of the contracts dated January 11, 2008, and January 22, 2008, illustrates that neither contract specifically provides that

all documents executed on October 25, 2005 remain in full force and effect and are incorporated into the contracts dated January 11, 2008, and January 22, 2008." (Doc. No. 15 at 4.)

Even accepting Plaintiffs' contention as true, the omission of contractual provisions specifically referencing the duty to arbitrate does not invalidate the broad language of the Arbitration Agreement, which is separate from the underlying loan and would still facially cover this dispute as a "future dealing" between the parties in the absence of a superseding arbitration agreement.  See Berkery v. Cross Country Bank, 256 F. Supp. 2d. 359, 369 (E.D. Pa. 2003) ("[W]ell settled jurisprudence holds arbitration agreements to a life and validity separate and apart from the agreement in which they are embedded.").  Second, as Wells Fargo points out, both modifications explicitly reference the 2005 Loan: "[o]n 10/25/2005 we made a loan to you in the amount of $85,276.63 on which there is an outstanding balance of $83,553.34 on the date noted above."  (Doc. No. 1 Ex. B, C.)  Further, the second and final modification explicitly states that "[a]ll other provisions of your loan shall continue to remain in full force and effect."  (Id. Ex. C.)  As such, the Plaintiffs' contention is without merit.

Plaintiffs also argue that "the two contracts executed in January 2008 were not modifications to the previous contract; but, rather, a novation or substituted contract." (Doc. No. 15 at 5.)  Plaintiffs claim that if the modifications were a novation, then the prior contract is extinguished and arbitration cannot be compelled because no new arbitration agreement was signed with the modification.  (Id.)  As discussed above, however, the Arbitration Agreement has a separate existence from the underlying loan.  Accordingly, absent clear implication of recision of the Arbitration Agreement itself, it is not necessarily cancelled even if the prior loan contract was extinguished by a substituted contract.  See Berkery 256 F. Supp. 2d. at 369.  Here, the

modifications do not even mention the prior arbitration agreement, let alone purport to be an express rescission of that Agreement.  Further, as Wells Fargo points out, the novation case relied on by Plaintiffs holds that no novation has occurred when a party retains rights from the prior agreement.  See Cox v. Turner Const. Co., 540 A.2d 944, 948 (Pa. Super. Ct. 1988) ("The [original] contract between Otis and USR was not displaced; nor did a new Turner-Otis contract take its place.  USR retained certain rights . . . .  Therefore, a novation was not effected.")  Here, as discussed above, the final modification agreement between the parties explicitly states "all other provisions of your loan shall continue to remain in full force and effect."  (Doc. No. 1 Ex. C.)  As such, no novation has occurred, and this argument is also without merit.

    **B.  The Scope of the Dispute**

Despite the federal policy in favor of enforcing arbitration agreements, a reluctant party cannot be forced to arbitrate unless the dispute between the parties is within the scope of the arbitration agreement.  U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006) (citing Bel-Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 440 (3d Cir.1999)).  The Court's inquiry is very limited on this point, however, assessing only "whether the party seeking arbitration is making a claim which on its face is governed by the contract."  Berkery, 256 F. Supp. 2d. at 365 (citing Medtronic Ave, Inc. v. Adavanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001)).  Because arbitration is a creature of contract, the Court's inquiry is guided by the intent of the parties in making the arbitration agreement.  Id. at 366.  Further, the Court must resolve any doubts in this inquiry in favor of arbitration, such that "[a]n order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  Medtronic, 247 F.3d at 55.

Plaintiffs do not present any argument that this dispute is outside the scope of the arbitration agreement.  Based on the broad language discussed above, it is clear that the substance of the dispute in question facially falls under the scope of this arbitration agreement.  Plaintiffs' have pressed a fraud and conspiracy claim against Wells Fargo (Doc. No. 1 ¶¶ 30-39), both of which arise out of the 2005 Loan and "future dealings" between the parties.

### C. Litigating in Multiple Forums

Finally, while not presented in the main body of the Plaintiffs' brief in opposition or supported by any citation to authority, the Plaintiffs note in their conclusion that granting Wells Fargo's motion will not conclude the litigation in this Court with regards to Defendant American Bankers and that Plaintiffs will therefore be placed in the difficult position of litigating claims in two different forums.  (Doc. No. 15 at 5.)  As the Supreme Court has held, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."  Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 20 (1983).  Accordingly, "the Arbitration Act requires district courts to compel arbitration . . . when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985).  Based on these authorities and others cited by Wells Fargo, the possible inconvenience to Plaintiffs' is not grounds to deny the motion.[1]

## III. CONCLUSION

---

[1] The Supreme Court has noted: "[i]n some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration." Moses, 460 U.S. at 20 n.23 (citing Landis v. North American Co., 299 U.S. 248, 254-255 (1936)). Despite this possibility, the propriety of such a stay as between the Plaintiffs and Defendant American Bankers is not before the Court in the present motion.

Based on the foregoing, the Court will grant Well's Fargo Motion to Compel Arbitration (Doc. No. 13) and stay the case as to Wells Fargo until such arbitration has occurred pursuant to 9 U.S.C. § 3.  An order consistent with this memorandum will follow.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA KIESSLING and** | : | |
| **ROBERT MENDLER,** | : | Civil No. 1:08-cv-01600 |
| | : | |
| Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| **AMERICAN BANKERS LIFE** | : | |
| **ASSURANCE COMPANY OF** | : | |
| **FLORIDA and WELLS FARGO** | : | |
| **FINANCIAL** | : | |

## ORDER

**AND NOW**, this 16th day of December 2008, upon consideration of Defendant Wells Fargo Financial Pennsylvania, Inc.'s Motion to Compel Arbitration (Doc. No. 13), and for the reasons set forth in the Court's memorandum opinion filed herewith, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED**. The above-captioned matter is stayed as between the Plaintiffs and Wells Fargo Financial until such arbitration has been had in accordance with the terms of the agreement.

                                                        s/ Yvette Kane
                                                        Yvette Kane, Chief Judge
                                                        United States District Court
                                                        Middle District of Pennsylvania